BUSCH *v.* WILCOX.[1]

1. JUDGMENT—SET-OFF—RES JUDICATA—ACTION ON SUPERSEDEAS BOND.

Where, in an action for fraudulent representations inducing the execution of a logging contract, the plaintiff recovers judgment under a ruling of the court that certain overpayments claimed to have been made on the contract by the defendant should not be considered in reduction of damages, for the reason that they are the subject of another suit between the parties, the plaintiff, in a subsequent action upon the *supersedeas* bond given on appeal from such judgment, in which defendant claims a set-off to the amount of said overpayments, is estopped to assert that defendant's claim is barred by the judgment in the former action.

---

[1] R hearing denied December 17, 1895.

2. STATUTE OF LIMITATIONS—SET-OFF.

 Under 2 How. Stat. § 8731, a debt alleged by way of set-off is not barred by the statute of limitations unless the statutory period had run against it before the accruing of the claim upon which suit is brought.

3. LOGGING CONTRACT—OVERPAYMENTS—WHEN CAUSE OF ACTION ACCRUES.

 A logging contract provided that the amount of timber cut should be determined by the saw bills. By the terms of the sawing contract, a specified part of the price per thousand was to be paid upon monthly estimates, and the balance as the lumber was shipped, unless the owner should decide to leave lumber on the dock until the following spring, in which case final payment was to be made when the job was completed. Measurements were to be made by a competent person to be agreed upon by the parties, and were to be conclusive. The sawing was finished the latter part of September. No measurement was made of the lumber left upon the dock, but on November 1st an estimate thereof was furnished, and payment made accordingly. When the lumber was subsequently shipped, it was found to overrun the previous estimate, and payment was made for the excess. *Held*, that a cause of action for overpayments alleged to have been made on the logging contract did not arise, in any event, prior to the statement of November 1st, so as to set the statute of limitations in motion as against the same.

4. SUPERSEDEAS BOND—WHEN RIGHT OF ACTION ACCRUES—REHEARING—TAXATION OF COSTS.

 A right of action on a *supersedeas* bond given under 2 How. Stat. § 8679, accrues upon the rendition of a judgment of affirmance in the appellate court, or, at the latest, upon the earliest date at which costs may be taxed, although the costs are not taxed at that time, and a motion for rehearing is afterwards made.

5. APPEAL—REHEARING—STAY OF PROCEEDINGS.

 A motion for rehearing in the Supreme Court does not, of itself, operate to stay proceedings on a final judgment.

  Error to Wayne; Donovan, J. Submitted April 3, 1895. Decided October 1, 1895.

  *Assumpsit* by William C. Busch against George A. Wilcox and others on a *supersedeas* bond. (See 82 Mich. 315,

336; 94 Mich. 223.)   From a judgment for plaintiff, defendants bring error.   Reversed.

*John D. Conely,* for appellants.

*Cowles & Jerome (Henry M. Duffield,* of counsel), for appellee.

MONTGOMERY, J.   Action on the *supersedeas* bond given on the appeal of the case of *Busch* v. *Wilcox,* which is reported in 82 Mich. 315.   That action was based upon an alleged fraudulent representation concerning the subject-matter of a logging contract, and in the action plaintiff recovered a verdict of $5,000, which was, on appeal to this court, affirmed.   The defendants in this action on the bond undertook to set off, against the claim of the plaintiff, a demand due defendant Wilcox arising out of the same contract, and consisting of a claim for overpayment made by Wilcox to Busch, while he (Busch) was engaged in the performance of the contract.   The plaintiff contends that this claim of set-off is barred by the previous judgment in the fraud case, and, further, that, if it should be held that that judgment does not preclude the defendant, his claim was barred by the statute of limitations before this suit was brought.

1. It appears that on the trial of the fraud case the court instructed the jury as follows:

"Some evidence has been introduced that Mr. Wilcox paid Mr. Busch more than the contract price of the logs put in, and it is conceded by counsel for both parties that, since the present action was commenced, Mr. Wilcox has sued Mr. Busch to recover back such overpayments, if made.   Another jury in the other case will pass upon that, and allow Mr. Wilcox with interest,—that is, if he is entitled thereto; and you, therefore, should not attempt to deduct the amount of such overpayments from the damages you find, if you find Mr. Busch is entitled to any."

Mr. Justice Champlin, speaking for the court, on the appeal of the fraud case, after referring to this instruction, said that "his (Wilcox's) remedy was therefore left intact for any overpayment or breach of contract on Busch's part."

This must be treated as the rule established for this case. The plaintiff having had the benefit of that rule, it would be grossly inequitable for him to be permitted to now assert that his damages, which he recovered under that ruling, were excessive, and should have been reduced by the amount of defendant's claim, and that, as they were not, the claim is barred. See *Michels* v. *Olmstead*, 157 U. S. 198; *Philadelphia, etc., R. Co.* v. *Howard*, 13 How. 307; *Davis* v. *Wakelee*, 156 U. S. 680; *Busch* v. *Jones*, 94 Mich. 223.

2. 2 How. Stat. § 8731, reads:

"All the provisions of this chapter [relative to limitations of personal actions] shall apply to the case of any debt or contract alleged by way of set-off on the part of a defendant, and the time of the limitation of such debt shall be computed in like manner as if an action had been commenced therefor at the time when the plaintiff's action was commenced, provided such debt or contract would have been barred according to law before the accruing of the claim or demand upon which such defendant is sued."

Under the terms of this statute, the claim of defendant is barred if the period of limitation had run against it before the accruing of the cause of action upon which the plaintiff brings suit, and not otherwise. The only two questions material to be considered, therefore, in determining whether the statute bars the claim, are when the plaintiff's cause of action accrued, and when the defendant's cause of action matured.

By the terms of the logging contract between Busch and Wilcox, the logs were to be scaled on the skids, but there was testimony tending to show that, after the work was entered upon, that agreement was modified, and it was agreed that the amount of the lumber cut was to be

determined by the saw bills. At this time it was not determined whether the lumber was to be sawed at Cheboygan or Prentiss Bay. Subsequently an arrangement was made between Packard Bros., of Cheboygan, and Noyes & Sawyer, who had become interested in the timber, that the sawing should be done at Cheboygan. The contract between these parties, Noyes & Sawyer and Packard Bros., provided that the sawing should be paid for at the rate of $2.75 per 1,000; that the estimate should be made on the first of each month, and $2 per 1,000 paid upon this estimate; that the remaining 75 cents should be paid from time to time, as fast as the lumber was shipped; and, in case Noyes & Sawyer decided to leave lumber on the dock during the winter, the 75 cents per 1,000 feet should be paid when the job of sawing was completed, and the lumber should be shipped in the spring. It was also provided that the amount should be measured by some competent person, to be agreed upon between the parties, at their mutual expense, and that the measurement should be conclusive between the parties, as to the amount, in settling for such sawing. It appears from the testimony that the last of the sawing was done about the 23d of September, 1884; that no measurement of the lumber left upon the dock was made, but that on the 1st of November an inspection of the amount was made and a bill furnished by Packard Bros. to Noyes & Sawyer, containing a charge for 930,000 feet on dock ready for shipment, accompanying which was a letter, in which the following occurs: "The 930 M., as estimated, is rather under than over the amount on hand." There was testimony tending to show that when the shipments were subsequently made, in the summer of 1885, it was found that the amount left on the dock did exceed 930,000 feet by a few thousand feet, and that Noyes & Sawyer paid Packard Bros. for the excess.

On the former hearing of this case, reported in 94 Mich. 223, under the title of *Busch* v. *Jones*, we held that under the agreement between the parties, that Wilcox

should advance money upon the contract, and that the quantity of logs cut should be determined by the mill scale, the right of action for any excess of these advances would not accrue until the amount of lumber cut had been ascertained according to the method agreed upon. The plaintiff now contends that as the agreement between Noyes & Sawyer and Packard Bros. provided for a scale to be made at the close of the sawing season, and that as an estimate, which the parties acted upon, was made November 1, 1884, this must be deemed as fixing the saw bill contemplated, and that either date is more than six years before the plaintiff's cause of action accrued. On the other hand, the defendants contend that the agreement with plaintiff contemplated that the actual scale should govern, and that this scale was not actually made until the summer of 1885, when the lumber was shipped out, and that the 1st of November estimate was not intended to be final; but it is further contended that, if it had been, this was within six years of the date when plaintiff's right of action accrued.

The circuit judge charged the jury as follows:

"If the jury believe that Busch should be allowed the same as a sawmill owner, even then there was no settlement until November,1890 [1884?]; but if you believe he agreed with Hall to take the measure, and that the measure should be when it was shipped, that would be the final measure, then that would be the date of settlement."

In another portion of the charge the circuit judge said:

"The right of action upon the bond accrued upon the rendition of the judgment of affirmance in the Supreme Court, October 10, 1890."

Notwithstanding these instructions, the court left it to the jury to determine whether the set-off was barred by the statute of limitations, saying that if the date of settlement was found to be July,1885, the defendant's demand was not barred, and implying that otherwise it was.

If the circuit judge was right in his statement that the defendant's claim in no event accrued before November 1,

1884, and that plaintiff's demand in suit accrued October 10, 1890, it follows that the defendant was entitled to an allowance of his set-off, as matter of law.   The plaintiff, however, contends that the circuit judge was not right on either proposition, contending, first, that the right of set-off was fixed September 23 or October 1, 1884.   We think this is too narrow a construction of the contract between Noyes & Sawyer and Packard Bros.   Until it was determined that the lumber was to be left on the dock, to be shipped the following spring, there was no duty on the part of Noyes & Sawyer to pay for the sawing the reserve of $.75 per thousand.   The first time that any demand was made for this was November 1st, when the statement was rendered by Packard Bros.; and we think this is the first date at which it can be said that there was anything approximating a measurement, which could amount to a mill scale or constitute a saw bill.

We are also of the opinion that the circuit judge was right in his statement that the plaintiff's right of action on the *supersedeas* bond accrued on the rendition of the judgment in the Supreme Court, October 10, 1890.   The fact that a motion for a rehearing was contemplated or made did not of itself operate to stay proceedings. Black, Judgm. § 960; *Buckley* v. *Sutton*, 38 Mich. 1.   The fact that costs were not then taxed does not operate to stay the right of action beyond the period in which they might have been taxed.   When the costs are taxed, the taxation relates back to the date of the judgment. *Hunt* v. *Middlesworth*, 44 Mich. 448; *Whelpley* v. *Nash*, 46 Mich. 25.   But it is contended that the doctrine of relation should not be applied so as to work prejudice to the rights of the party; but, on the other hand, it was within the power of the plaintiff to have caused the costs to be taxed within a very few days; and while it may be said that, until the period within which costs might have been taxed had elapsed, the statute of limitations would not begin to run, yet, as this was something within the control of the plaintiff, it ought not to be said either that he could, by his delay in

taking this proceeding, extend the period of limitations, or that the right which depended alone on his own volition had not accrued. See *Palmer* v. *Palmer*, 36 Mich. 487. The case of *Weiss* v. *Wayne Circuit Judge*, 50 Mich. 158, cited by plaintiff's counsel, involved the construction of a statute; and it was held that the statute requiring that execution must issue within 30 days from the date when it is legally issuable, in order to bind the surety, should not be construed as requiring the issue of execution at once on the entry of judgment, as, if it did, this would discharge the surety at the end of 30 days, even if there had been an intervening stay of proceedings. Other reasons were also assigned, but we think that case is clearly distinguishable from the case under consideration.

The judgment will be reversed, and a new trial ordered.

McGRATH, C. J., GRANT and HOOKER, JJ., concurred. LONG, J., did not sit.